UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GREGORY R. PACE,

     Plaintiff,

v.                           Case No:   6:14-cv-2075-Orl-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Gregory Ross Pace's Complaint (Doc. 1) filed on December 19, 2014.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### I.     Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.     Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work or any other

substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.      Procedural History

On September 13, 2011, Plaintiff filed an application for disability insurance benefits and for supplemental security income asserting an onset date of May 1, 2009.  (Tr. at 93-94, 232-39).  Plaintiff later amended the onset date to January 20, 2011.  (Tr. at 32).  Plaintiff's applications were denied initially on December 12, 2011, and on reconsideration on February 29, 2012.  (Tr. at 93-93, 129-30).  A hearing was held before Administrative Law Judge ("ALJ") Jessica Inouye on April 2, 2013.  (Tr. at 29-66).  The ALJ issued an unfavorable decision on May 23, 2013.  (Tr. at 11-23).  The ALJ found Plaintiff not to be under a disability from January 20, 2011 through the date of the decision.  (Tr. at 23).

On November 13, 2014, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-3).  Plaintiff filed a Complaint (Doc. 1) in the United States District Court on December 19, 2014.  This case is ripe for review.  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 17).

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]  An ALJ must determine

---

[1]  Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January

whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through March 31, 2013.  (Tr. at 13).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 20, 2011, the alleged amended onset date.  (Tr. at 13).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments:  left shoulder degenerative joint disease, obesity, depression, and anxiety.  (Tr. at 13).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (Tr. at 14-15).  At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium unskilled work except:

> the claimant's overhead reaching with left upper extremity as well as pushing and pulling with the left upper extremity could be performed on a frequent basis.  The claimant is restricted from climbing ladders, ropes, or scaffoldings, but can occasionally crawl.  Further, the claimant should avoid concentrated exposure to hazards and pulmonary irritants.  The work should not be a high stress, fast-paced type of work environment that has frequent changes to the type of work on a day-to-day basis.  The work tasks should not change on [sic] frequent basis.  As well, interactions with others should be on a frequent basis or less.

---

1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

(Tr. at 16). The ALJ determined that Plaintiff is unable to perform any past relevant work. (Tr. at 21). Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 22). Specifically, the ALJ found that Plaintiff was able to perform the following jobs: (1) Sorter, DOT # 929.687-022, medium exertional level; (2) Janitor, DOT # 709.687-014, medium exertional level; and (3) Hand Packager, DOT # 920.587-018, medium exertional level.[2] (Tr. at 22). The ALJ concluded that Plaintiff was not under a disability from January 20, 2011, through the date of the decision. (Tr. at 23).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*,

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole,

taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at

1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the

entire record to determine reasonableness of factual findings).

## II.    Analysis

On appeal, Plaintiff raises three issues.  As stated by Plaintiff, they are:

(1)  The appeals council erred by failing to notify Plaintiff where and when to submit new and material evidence as well as a memorandum of law and that error is good cause to remand under sentence six of 42 U.S.C. § 405(g).

(2)  The ALJ failed to provide sufficient rationale based on substantial evidence to find Plaintiff's mental impairments do not meet or medically equal listings 12.04 and 12.06 when considered in combination.

(3)  The residual functional capacity fails to give proper weight to all medical opinions of record including the treating psychiatrist and psychologist, [sic] violates SSR 96-8p, and is not based on substantial evidence.

(Doc. 19 at 14, 17, 23).  The Court will discuss each issue in turn.

### A.  Appeals Council and New Evidence

Plaintiff argues that this Court should consider the treatment notes of Margaret Freeman,

LMHC and Roger Keyser, Ph.D. that were not provided to the ALJ or to the Appeals Council.

Plaintiff argues that there is good cause why these records were not provided previously and this

evidence is new and material.  The Commissioner argues that Plaintiff failed to show good cause

why these materials were not provided previously, and even if Plaintiff establishes good cause,

the new evidence is not material.

### 1.  Standard Under Sentence Six

New additional evidence that is presented to the Court and not to the administrative agency

must be considered under a Sentence Six analysis.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496

F.3d 1253, 1261 (11th Cir. 2007).  Sentence Six provides a federal court "with the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'"  *Id.* (quoting 42 U.S.C. § 405(g)).

Sentence Six remands are "entirely different" from Sentence Four remands.  *Id.* at 1267. Sentence Six allows a claimant the opportunity to present new and material evidence to the district court that was not available to the Commissioner or the Appeals Council.  *Id.*  The evidence must be new and material and not a part of the administrative record, and the claimant must show good cause why this material was not incorporated in the administrative record.  *Id.*  The standard for considering additional evidence is as follows:

> To remand under sentence six, the claimant must establish:  1) that there is new, non-cumulative evidence; 2) that the evidence is material - relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level. [citations omitted].  A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.

*Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1366-67 (M.D. Fla. 2009) (citation omitted).

### 2.  Good Cause

Plaintiff argues that good cause exists for the failure to provide the treatment notes of Ms. Freemen and Dr. Keyser to the Appeals Council.  Plaintiff argues that it is standard practice for the Appeals Council to send a letter to counsel, indicating that the audio recording is available, that a claimant has twenty-five (25) days to submit any new and material evidence and a memorandum of law, and also provides that any correspondence must be sent to a specified address.  Plaintiff's counsel asserts that he never received this letter and this standard letter was

omitted from the administrative transcript.  Plaintiff states that on July 16, 2013, he wrote a letter requesting a review of his unfavorable decision by the Appeals Council, requested a copy of the audio recording of the hearing, and requested an additional forty-five (45) days after receipt of the audio recording to submit additional evidence.  (Tr. at 7).  Plaintiff's counsel contends that he never received a response from the Appeals Council.  (Tr. at 7).  Plaintiff's counsel argues that he repeatedly contacted the Appeals Council but was never informed that he was able to provide new and material evidence prior to receiving the Appeals Council's denial of Plaintiff's request for review on November 21, 2014.  Plaintiff argues that had he been permitted, he would have provided the treatment records of Ms. Freeman and Dr. Keyser to the Appeals Council.  Plaintiff requests that the Court find good cause for the failure to provide these records to the Appeals Council and requests that the Court consider these records.

The Commissioner responds in footnote 4 that the Appeals Council sent a letter to Plaintiff's attorney on August 8, 2013.  (Doc. 26 at 20 n.4).  The Commissioner concedes that this letter was not part of the original transcript.  However, the Commissioner filed a Supplemental Record (Doc. 27) on August 7, 2015 that included this letter.  The Supplemental Transcript includes the letter addressed to Plaintiff's counsel that was dated August 8, 2013. (Doc. 27 at 527).  The letter indicates that the Appeals Council granted review of the case, allowed for Plaintiff to send additional evidence that was new and material to the issues raised at the hearing, and allowed for Plaintiff to submit a statement of facts and law.  (Doc. 27 at 527).[3] The Appeals Council afforded Plaintiff twenty-five (25) days to provide this additional information.  (Doc. 27 at 527).

---

[3]  The letter from the Appeals Council was sent to the same address used by Plaintiff's counsel in the letter sent by Plaintiff's counsel to the Appeals Council dated July 16, 2013.  (*See* Tr. at 7; Doc. 27 at 527).

Although the letter from the Appeals Council was not part of the original transcript filed in this case, it was part of the administrative record and was filed with the Court on August 7, 2015.  The letter indicates that it was sent to Plaintiff's counsel on August 8, 2013, and Plaintiff was afforded the opportunity to present additional evidence and a statement of facts and law to the Appeals Council.  To show good cause, Plaintiff argues that he never received a letter from the Appeals Council allowing him to submit additional evidence.  The Supplemental Record belies this statement.  Therefore, the Court finds that Plaintiff has failed to show good cause for failing to submit the additional evidence of the records of Ms. Freeman and Dr. Keyser to the Appeals Council.

Further, the Court reviewed the treatment notes of Ms. Freemen and Dr. Keyser that were not submitted to the Appeals Council.  The records are comprised of the treatment notes of Ms. Freeman dated March 15, 2011, March 29, 2011, April 19, 2011, May 17, 2011, June 2, 2011, June 28, 2011, July 25, 2011, August 9, 2011, August 23, 2011, September 14, 2011, September 25, 2011, November 10, 2011, December 1, 2011, December 20, 2011, January 10, 2012, January 24, 2012, February 27, 2012, May 2, 2012, and May 17, 2012; and the treatment notes of Roger Keyser, Ph.D. dated November 7, 2012, November 14, 2012, November 28, 2012, December 12, 2012, and January 7, 2013.  (Doc. 19 at 30-34, 35-54).

All of these treatment records predate the hearing before the ALJ that occurred on April 2, 2013; predate the ALJ's decision of May 23, 2013; and predate the Appeals Council's denial of request for review on November 13, 2014.  (Tr. at 1, 23, 29).  Thus, in addition to failing to show good cause regarding the letter discussed *supra*, Plaintiff also failed to show good cause why these records – all of which predate the hearing, the decision by the ALJ, and the Appeals Council's denial – were not submitted during the administrative proceedings.  The Court finds,

therefore, that Plaintiff has failed to establish good cause for the failure to produce the records at issue during the administrative process.

### 3. New and Material Evidence

Even though the Court finds no good cause for the failure to provide the treatment notes during the administrative process, the Court will consider whether these treatment notes are new and material evidence and whether there is a reasonable possibility that this evidence would change the administrative outcome. There is no dispute that the records from Ms. Freeman and Dr. Keyser were not considered by either the ALJ or the Appeals Council, and are treatment notes from treating medical professionals.

Plaintiff argues that the new evidence is "material" because these records from treating medical professionals support a finding that Plaintiff met the subsection B criteria of Listing 12.04 and Listing 12.06.[4] Plaintiff claims the ALJ found that Plaintiff had only mild restrictions in activities of daily living but these treatment notes show that Plaintiff frequently had difficulty accomplishing tasks. Without pinpoint citation to these new records, Plaintiff claims these records reflect that he would stay in bed during the day to avoid stress, struggled with motivation, was unable to stay on tasks, could not finish his studies, and could not complete setting up his Amazon store. Further, Plaintiff argues that the ALJ found Plaintiff to have moderate difficulties in social functioning, yet these treatment notes show marked difficulty in social functioning. Again without pinpoint citation to these records, Plaintiff argues that he had conflicts with co-workers, he avoided people, he stayed in bed during the day, he had difficulty attending AA meetings, and had difficulty setting boundaries with his girlfriend. Finally,

---

[4] Listings 12.04 and 12.06 are fully set forth in the next section *infra*.

Plaintiff argues that the ALJ found Plaintiff had moderate difficulties in concentration, persistence, and pace, but these treatments notes show Plaintiff struggled to stay on task.

The Commissioner argues that the treatment notes are not material and could not reasonably be expected to change the ALJ's decision.  The Commissioner contends that the majority of the treatment notes are from Ms. Freeman from March 2011 through May 2012, but these notes do not show any mental status examinations.  Further, these treatment notes do not support a finding that Plaintiff met the Listings.

Plaintiff claims the additional treatment notes show Plaintiff to be more limited than found by the ALJ to the point that Plaintiff has marked limitations in subsection B areas, rather than mild or moderate limitations as found by the ALJ.  For Plaintiff to prevail on this issue, Plaintiff must show that these treatment notes support a finding that he met the criteria of subsection B of Listing 12.04 or 12.06 such that there is a reasonable possibility that consideration of the treatment notes would change the administrative result.  To meet the criteria of subsections B of Listing 12.04 and Listing 12.06, Plaintiff must show a **marked** restriction in two of the following areas:  activities of daily living; difficulties in maintaining social functioning; and difficulties in concentration, persistence, or pace.[5]  20 C.F.R. § Pt. 404, Subpt. P, App. 1 §§12.04, 12.06.  A "marked" limitation or difficulty,

> means more than moderate but less than extreme.  A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(C).

---

[5]  By contrast, the ALJ found Plaintiff had mild restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence or pace. (Tr. at 15).

The Court carefully considered the treatment notes of Ms. Freeman and Dr. Keyser. Beginning with Ms. Freeman's treatment notes, Ms. Freeman did not indicate that she completed a mental status examination of Plaintiff in any of the treatment notes provided. (Doc. 19 at 35-53). The treatment notes mainly consist of Plaintiff's subjective complaints and Ms. Freeman's suggestions. (Doc. 19 at 35-53).

Some examples of the content of Ms. Freeman's treatment notes show that on March 15, 2011, Plaintiff admitted that he was not looking for work, was having some difficulties with his family, but his family was managing. (Doc. 19 at 53). Ms. Freeman suggested taking steps toward gaining employment. (Doc. 19 at 53). Plaintiff asserted that his boat needed extensive repairs and he was unable to afford them, but would like to go to Key West. (Doc. 19, at 53). On March 29, 2011, Plaintiff was studying for his Microsoft certification, the family was continuing to have problems, and he had a "desire" to stay in bed. (Doc. 19 at 52). On April 19, 2011, Plaintiff reported spending a lot of time at the library, and was doing some job seeking, but lacked motivation. (Doc. 19 at 51). On May 17, 2011, Plaintiff admits to staying in bed to avoid the conflicts at home and Ms. Freeman challenged Plaintiff, informing him that this is an unhealthy strategy. (Doc. 19 at 50). On June 2, 2011, Plaintiff admitted to being extremely uncomfortable in a group of people, and Ms. Freeman counseled him on cognitive and behavioral approaches to control his anxiety. (Doc. 19 at 49). Plaintiff developed a plan to return to Key West. (Doc. 19 at 49). On June 28, 201, Plaintiff reported attending AA meetings. (Doc. 19 at 48). Plaintiff had plans to seek part-time work and was going to AA meetings. (Doc. 19 at 47). On January 24, 2012, Plaintiff reported that he was feeling less stressed, was looking for a new AA meeting to attend, and continued to have difficulty interacting with others. (Doc. 19 at 38).

Turning to Dr. Keyser's notes, the Court finds that these notes mainly consist of Plaintiff's subjective complaints and Dr. Keyser's analysis of these complaints.  (Doc. 19 at 31-34).  On November 7, 2012, Plaintiff reported his family problems, and that he would like to sail to Puerto Rico.  (Doc. 19 at 34).  Dr. Keyser found Plaintiff to be doing well but had anxiety and depression.  (Doc. 19 at 34).  Dr. Keyser found Plaintiff's mood appeared to be euthymic.  (Doc. 19 at 34).  On November 14 and 28, 2012, Plaintiff reported he spent a good deal of time in bed, but still wanted to go to Puerto Rico.  (Doc. 19 at 32, 33).  Dr. Keyser found Plaintiff to have anxiety and depression, but his mood appeared euthymic.  (Doc. 19 at 32, 33).  On November 28, 2012, Plaintiff reported hearing voices, but Dr. Keyser found that Plaintiff's description was not consistent with auditory hallucinations.  (Doc. 19. at 32).

After consideration of all of the new treatment records, the Court finds that these treatment notes do not provide evidence of a marked restriction in two of the following areas: activities of daily living; difficulties in maintain social functioning; and difficulties in concentration, persistence, or pace.  These records do not show that Plaintiff has more than moderate, but less than extreme limitations.  Plaintiff's complaints in these treatment notes fail to show a degree of limitation such that it seriously interferes with Plaintiff's ability to function independently, appropriately, effectively, and on a sustained basis.[6]  Although the records do support some limitations in the subsection B areas, the Court finds that these records do not support a reasonable possibility that Plaintiff met Listings 12.04 or 12.06.  Absent a showing that there is a reasonable possibility that these new treatment records support a finding of marked restrictions in two of the subsection B criteria, Plaintiff cannot show that he met Listings 12.04

---

[6]  In the next section *infra*, the Court discusses the subsection B criteria for the information that was presented to the ALJ.  That evidence supports the ALJ's findings concerning the subsection B criteria, and for brevity will not be repeated in this portion of the Opinion and Order.

or 12.06.  Thus, Plaintiff failed to show that there is a reasonable possibility that these treatment notes would change the administrative outcome.  The Court finds that these treatment notes are not material and that remand under Sentence Six of 42 U.S.C. § 405(g) is not warranted.

### B.  Listings 12.04 and 12.06

Plaintiff argues that he met the criteria for Listings 12.04 and 12.06 and the ALJ erred in failing to find that Plaintiff met one or both of these Listings.  The Commissioner argues that Plaintiff failed to sustain his burden of showing that he met the requirements of Listings 12.04 or 12.06.

### 1.  Language of Listings 12.04 and 12.06

Listing 12.04 concerning Affective Disorders provides as follows:

Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A.  Medically documented persistence, either continuous or intermittent, of one of the following:

  1.  Depressive syndrome characterized by at least four of the following:

    a.  Anhedonia or pervasive loss of interest in almost all activities; or

    b.  Appetite disturbance with change in weight; or

    c.  Sleep disturbance; or

    d.  Psychomotor agitation or retardation; or

    e.  Decreased energy; or

    f.  Feelings of guilt or worthlessness; or

    g.  Difficulty concentrating or thinking; or

      h.   Thoughts of suicide; or

      i.   Hallucinations, delusions, or paranoid thinking; or

2.   Manic syndrome characterized by at least three of the following:

      a.   Hyperactivity; or

      b.   Pressure of speech; or

      c.   Flight of ideas; or

      d.   Inflated self-esteem; or

      e.   Decreased need for sleep; or

      f.   Easy distractibility; or

      g.   Involvement in activities that have a high probability of painful consequences which are not recognized; or

      h.   Hallucinations, delusions or paranoid thinking; or

3.   Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

1.   Marked restriction of activities of daily living; or

2.   Marked difficulties in maintaining social functioning; or

3.   Marked difficulties in maintaining concentration, persistence, or pace; or

4.   Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1.   Repeated episodes of decompensation, each of extended duration; or

    2.   A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3.   Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § Pt. 404, Subpt. P, App'x 1, § 12.04.

Listing 12.06 concerning Anxiety Related Disorders provides as follows:

In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A.  Medically documented findings of at least one of the following:

    1.   Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

        a.   Motor tension; or

        b.   Autonomic hyperactivity; or

        c.   Apprehensive expectation; or

        d.   Vigilance and scanning; or

    2.   A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

    3.   Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

    4.   Recurrent obsessions or compulsions which are a source of marked distress; or

     5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

B. Resulting in at least two of the following:

     1. Marked restriction of activities of daily living; or

     2. Marked difficulties in maintaining social functioning; or

     3. Marked difficulties in maintaining concentration, persistence, or pace; or

     4. Repeated episodes of decompensation, each of extended duration.

OR

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. § Pt. 404, Subpt. P, App'x 1, § 12.06.

### 2. Subsection A

Plaintiff argues that the ALJ erred in failing to discuss the subsection A criteria for both Listings 12.04 and 12.06. The Commissioner responds that both Listings require that a claimant satisfy the requirements of subsection A and then the requirements of either B or C. The Commissioner states that the subsection A requirements are the diagnostic criteria. By finding Plaintiff had "severe" anxiety and depression at step two, the Commissioner contends that the ALJ presumably satisfied the part A criteria of the Listings. Even without a specific subsection A finding, the Commissioner argues that the ALJ focused her discussion on whether Plaintiff was able to satisfy the requirements of part B, and found that Plaintiff was not able to meet those requirements. Thus, the Commissioner argues that the ALJ did not commit reversible error by failing to discuss the subsection A criteria of the Listings.

In her decision, the ALJ specifically discussed Listings 12.04 and 12.06. (Tr. at 14). As discussed further *supra*, the ALJ found that Plaintiff did not meet the criteria for either subsection B or C. (Tr. at 14-15). After finding that Plaintiff failed to satisfy the criteria of either subsection B or C, the ALJ had no need to analyze whether Plaintiff met the subsection A criteria. The Court finds that the ALJ did not err in failing to discuss the subsection A criteria for Listings 12.04 and 12.06.

### 3.      Subsection B

Plaintiff argues that the ALJ erred in finding Plaintiff had only mild restrictions in performing activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence or pace. The Commissioner responds that the medical evidence of record supports the ALJ's determination that Plaintiff failed to meet the criteria of subsection B.

Both Listings 12.04 and 12.06 include subsections A, B, and C. Plaintiff only argues that the ALJ erred as to subsections A and B and raises no issues as to subsection C. Thus, the Court will focus its analysis on subsections A and B. As stated above in the prior section, to meet the criteria of subsection B of Listings 12.04 and 12.06, Plaintiff must show a **marked** restriction in two of the following areas:  activities of daily living; difficulties in maintain social functioning; and difficulties in concentration, persistence, or pace. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 §§12.04, 12.06. For ease of reference, the Court will again include the definition for a marked limitation. A "marked" limitation or difficulty,

> means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(C).

At step three, to meet the requirements of a Listing, a plaintiff must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). The Listings of Impairments in the Social Security Regulations identify impairments that are considered severe enough to prevent a person from engaging in gainful activity. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If a plaintiff can meet a listed impairment or otherwise establish an equivalence, then a plaintiff is presumptively determined to be disabled and the ALJ's sequential evaluation of a claim ends. *Edwards v. Heckler*, 736 F.2d 625, 626 (11th Cir. 1984). The burden is on Plaintiff to show that he meets the Listings. *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To meet a Listing, a plaintiff must have a diagnosis included in the Listings, and "must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 1525(a)-(d)). "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment." *Id*. (citing 20 C.F.R. § 404.1526(a)).

**a. Activities of Daily Living**

As to the first category of activities of daily living, the ALJ found Plaintiff to have mild restrictions. (Tr. at 15). The ALJ considered Plaintiff's subjective testimony concerning his daily activities and Plaintiff's Function Report - Adult completed by Plaintiff on November 15,

2011.  (Tr. at 15, 16-17, 277-284).  The ALJ noted that Plaintiff's Function Report showed that he takes care of his two children, and the ALJ referred to Plaintiff's testimony at the hearing that he gets his children ready for school.  (Tr. at 15).  The ALJ also noted that while Plaintiff's children are at school, he cleans, prepares meals, and washes their clothes.  (Tr. at 15).  When the children return home, the ALJ noted that Plaintiff feeds the children dinner, and after they go to bed, he tries to work on his computer.  (Tr. at 15).  The ALJ also noted that Plaintiff is attempting to set up a store online to sell items.  (Tr. at 15).  The ALJ concluded that Plaintiff had mild difficulties with activities of daily living.

Plaintiff argues that the ALJ ignored some of Plaintiff's testimony that would support a marked restriction in activities of daily living.  Plaintiff asserts that he is unable to keep track of day-to-day things, fails to remember to take his keys when leaving the house, tries to clean but it takes him all day, has panic and anxiety attacks, stays in his bedroom all day due to anxiety, gets frustrated easily, and is unable to go to the store easily.  (Doc. 19 at 21, citing Tr. at 42).

Plaintiff indicated in the Function Report that he takes care of his personal needs, he takes care of two children ages 4 and 11, he feeds and prepares simple meals daily, he does dishes, he cleans up after a dog, and he goes food shopping.  (Tr. at 277-284).  At the hearing, Plaintiff testified that he gets his children ready for school, and then comes home and cleans.  (Tr. at 40).  When he cleans, it takes him longer than he thinks it should.  (Tr. at 42-43).  When school is done, he feeds the children dinner, makes sure their clothes and everything are ready, and after they go to bed, he works on the computer.  (Tr. at 41).

The ALJ considered Plaintiff's subjective testimony and Function Report.  The ALJ found that Plaintiff was not as limited as Plaintiff alleged.  The ALJ found, "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged

symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. at 17).  The ALJ considered the activities of daily living that Plaintiff performed, which included Plaintiff's own reports and testimony, and determined that Plaintiff was not as limited as he alleged.  The Court finds that the ALJ's finding that Plaintiff had mild limitations in the activities of daily living is supported by the substantial evidence.

### b.  Social Functioning

Plaintiff argues that the ALJ did not provide sufficient rationale to determine that Plaintiff had moderate difficulties rather than marked difficulties in maintaining social functioning.  Plaintiff contends the ALJ never addressed that Plaintiff had trouble making and keeping friends; that he "burned his bridges" in Key West; that he lost his job due to not getting along with people; that his behavior made others nervous; that he did not relate well to co-workers, supervisors or customers; that he was involved in verbal arguments; that he could not work in an office full of people; and that he liked to fish because he could do it alone.  Plaintiff also cites to Dr. Gates and Dr. Keyser's opinion that Plaintiff would be seriously limited in accepting instructions, responding appropriately to criticism from supervisors, and getting along with co-workers or peers.

The Commissioner responds that the ALJ's finding that Plaintiff had moderate difficulties in maintaining social function was supported by the record.  The Commissioner argues the ALJ acknowledged that Plaintiff testified he had difficulty in interacting with people, avoided contact with people, and did not get along with people in his past work.  However, the ALJ cited to other instances where Plaintiff was able to get along with people and be in a group of people.

In finding Plaintiff had moderate difficulties in social functioning, the ALJ acknowledged Plaintiff testified that he has difficulties dealing with people, including leaving a cart in a grocery store and then leaving the store to avoid dealing with people.  (Tr. at 15, 17).  The ALJ noted that Plaintiff testified he yells at people when they bump into him at a store, he gets frightened and feels like someone is coming after him, and then he reacts by shaking and using the bathroom repeatedly or ends up hiding in his room and staying away from people.  (Tr. at 15, 17).  The ALJ noted that Plaintiff testified when he goes to group sessions he sits by the door, but if the groups are small, he is able to sit through the meeting.  (Tr. at 15, 17).  The ALJ noted that Plaintiff claimed to only socialize with his wife and two children.  (Tr. at 15).  At his consultative examination with Laura Hall, Psy.D., the ALJ noted that Plaintiff was able to maintain a conversation.  (Tr. at 15).[7]  The ALJ considered Plaintiff's statements but did not find Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms to be entirely credible based on the record as a whole.  (Tr. at 17).  After a thorough consideration of the evidence of record including many instances of Plaintiff's social functioning, the ALJ found Plaintiff to be moderately limited socially.  Further, in the RFC, the ALJ limited Plaintiff's interactions with others to a frequent basis or less.  (Tr. at 16).  The Court finds that the ALJ carefully considered the evidence of record and the ALJ's findings are supported by substantial evidence in the record.

Plaintiff also argues that Roger Keyser, Ph.D. and Todd Gates, D.O. determined that Plaintiff was "seriously limited" in accepting simple instructions and working in coordination with or proximity to others without being unduly distracted.  (Tr. at 525).  The ALJ considered

---

[7]  Dr. Hall found Plaintiff maintained rapport during the examination and was cooperative and cordial.  (Tr. at 414).

Dr. Keyser's and Dr. Gate's combined report acknowledging that they found these limitations. (Tr. at 20). The ALJ noted that Dr. Keyser and Dr. Gates found Plaintiff's "memory, understanding and remembering simple instructions, making simple work-related decisions, and sustaining ordinary routine without special supervision are unlimited or very good." (Tr. at 20). The ALJ only afforded Dr. Keyser's and Dr. Gates' Opinion some weight, finding that the RFC incorporated most of Plaintiff's limitations as listed by Dr. Keyser and Dr. Gates by limiting Plaintiff to unskilled work that does not involve high stress or a fast-pace, to work that does not change frequently, and to frequent or less interactions with others. (Tr. at 20). The Court finds that the ALJ's consideration of Dr. Keyser's and Dr. Gates' opinions is supported by substantial evidence.

The Court finds that the ALJ carefully considered the evidence of record as to Plaintiff's social functioning. The ALJ cited to the record considering both Plaintiff's limitations in interacting with people as well as his abilities to interact with people. The ALJ considered the medical evidence and Plaintiff's testimony, and determined that Plaintiff had moderate difficulties in maintaining social functioning. To compensate for this finding, the ALJ included a limitation in the RFC that interactions with others should be limited to a frequent or less basis. The Court finds that the ALJ's decision that Plaintiff had moderate difficulties in maintaining social functioning is supported by substantial evidence.[8]

The ALJ found that Plaintiff did not meeting Listings 12.04 or 12.06 due to Plaintiff not meeting the criteria of subsection B. Plaintiff raised no arguments as to subsection C and, as such, the Court finds that Plaintiff does not meet the criteria as to subsection C. The Court finds that the ALJ did not err in finding that Plaintiff failed to meet the requirements of Listings 12.04

---

[8]  Plaintiff makes no arguments as to the third criteria of concentration, persistence, and pace.

or 12.06.  The Court finds that the ALJ's decision is supported by substantial evidence as to this issue.

### C.  Weight of Medical Opinions

Plaintiff asserts that the ALJ erred in the RFC determination by finding Plaintiff capable of performing medium work.  Plaintiff argues that this finding conflicts with the opinions of Homi Cooper, M.D., and Reuben Brigety, M.D.  Plaintiff also asserts that the RFC conflicts with the opinions of Plaintiff's treating psychiatrist, Dr. Gates, and treating psychologist, Dr. Keyser.  The Commissioner responds that the ALJ afforded the appropriate weight to these medical professionals.

At the fourth step in the evaluation process, the ALJ is required to determine a plaintiff's RFC and, based on that determination, decide whether a plaintiff is able to return to his previous work.  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  The determination of a plaintiff's RFC is within the authority of the ALJ, and along with the claimant's age, education, and work experience, the RFC is considered in determining whether the claimant can work.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four.  *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  *Winschel v. Comm'r of*

*Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Id.* (citing *Cowart v. Shweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).  "Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless 'good cause' is shown." *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5); and *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  A doctor's opinion may be discredited when it is contrary to or unsupported by the evidence of record, or the opinion is inconsistent with the doctor's own medical records.  *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)).

Even though examining doctors' opinions are not entitled to deference, an ALJ is required to consider every medical opinion.  *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). To evaluate a medical source, the same criteria are used whether the medical source is a treating or non-treating doctor, with the following elements to be considered:  "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of any treatment relationship; (3) supportability; (4) consistency with other medical evidence in the record; and (5) specialization."  *Id.* (citations omitted).

### 1.  Dr. Cooper

Plaintiff argues that the ALJ's determination that Plaintiff is capable of performing medium work conflicts with the opinion of Homi Cooper, M.D.  Plaintiff contends that Dr. Cooper found that Plaintiff was more limited and not able to meet the requirements of medium

work.  The Commissioner responds that Dr. Cooper was a one-time examining physician and the ALJ was not required to defer to his opinion.  The Commissioner asserts that the ALJ afforded proper weight to the opinion of Dr. Cooper.

The requirements of medium work include "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c); 20 C.F.R. § 416.967(c).

On November 18, 2011, Dr. Cooper conducted a consultative examination of Plaintiff.  (Tr. at 406-410).  Plaintiff complained of neck pain and stiffness with his left arm.  (Tr. at 406).  Plaintiff described his left shoulder pain as severe, aching, and constant, and was made worse by raising his arm above shoulder level and is improved by keeping his arm by his side.  (Tr. at 406).  Dr. Cooper found Plaintiff's range of motion in all areas normal including the right shoulder that evidenced some pain, but found that Plaintiff had marked pain in his left shoulder.  (Tr. at 409).  Plaintiff's strength was 5/5 in upper and lower extremities.  (Tr. at 409).  Dr. Cooper's impression was neck pain with left-arm radiculopathy and bilateral shoulder pain, left more than right, opining that Plaintiff may have impingement syndrome or a labral tear on the left and mild impingement on the right, psoriasis, and chronic obstructive pulmonary disease.  (Tr. at 410).  Dr. Cooper determined that Plaintiff can stand and walk for 5 out of 8 hours per day; sit for 7 out of 8 hours per day; can lift/carry frequently up to 10-15 pounds below shoulder level; and can occasionally lift up to 25-35 pounds; should avoid overhead work with the left arm; can bend, stoop, crouch, crawl, and climb as needed; can reach, grasp, handle, feel, and finger on a repetitive basis; has no visual, auditory, or comprehension limitations; and has no environmental limitations.  (Tr. at 410).

The ALJ summarized Dr. Cooper's findings noting that even though Plaintiff complained of pain in his left shoulder, his strength in his rotator cuff bilaterally was 5/5.  (Tr. at 18, 19). After consideration of Dr. Cooper's opinion, the ALJ assigned his opinion some weight.  (Tr. at 20).  The ALJ found that the RFC should be marginally increased to the medium exertional level based on Plaintiff's allegations at the hearing.  (Tr. at 20).  The ALJ noted that Plaintiff testified he was not taking any medications for his physical problems.  (Tr. at 55).  Further, the ALJ found that there was no evidence of any recent treatment for physical impairments and the last evidence demonstrated that Plaintiff had improved as far as his symptoms of pain and limitations.  (Tr. at 20).  The ALJ noted that in the last available medical evidence dated September 25, 2012, Anthony W. Ware, M.D. found that Plaintiff's shoulder was improving and Plaintiff reported he had only a dull aching pain.  (Tr. at 504).  In Plaintiff's RFC, the ALJ incorporated some restrictions found by Dr. Cooper, such as limiting overhead reaching to frequently.  (Tr. at 16).

The Court finds that the ALJ considered Dr. Cooper's evaluation and opinion thoroughly. After noting Plaintiff had not gone to recent treatment for his shoulder and the last medical evidence showed improvement in his shoulder, the ALJ found that Dr. Cooper's opinion was entitled to some weight.  The ALJ determined that Plaintiff was able to perform work at the medium exertional level, with a limitation as to frequent overhead reaching.  The ALJ specified the weight she afforded Dr. Cooper's opinion and set forth reasons why she afforded his opinion some weight.  The Court finds that the ALJ did not err in affording Dr. Cooper's opinion some weight, and the ALJ's decision is supported by substantial evidence.

### 2.   Dr. Brigety

Plaintiff argues that the ALJ erred in assigning some weight to the opinion of Reuben

Brigety, M.D., a state agency non-examining physician.  Plaintiff argues that Dr. Brigety found Plaintiff to be more restricted than provided in the RFC.  The Commissioner responds that the ALJ did not err in affording the opinion of Dr. Brigety some weight.

Dr. Brigety completed a Residual Functional Capacity Assessment on February 16, 2012. (Tr. at 103-06).  Dr. Brigety found Plaintiff able to lift/carry 20 pounds occasionally; lift/carry 10 pounds frequently; stand/walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday.  (Tr. at 103-04).  Dr. Brigety found Dr. Cooper's opinion limiting Plaintiff to walk/stand for 5 hours out of an 8-hour day too limiting, and found Plaintiff able to walk/stand for 6 hours out of an 8-hour day.  (Tr.at 103).  Dr. Brigety found that Dr. Cooper's opinion was an underestimate of Plaintiff's restrictions or limitations, and was only a snapshot of Plaintiff's functioning.  (Tr. at 108).

The ALJ considered Dr. Brigety's assessment and afforded his assessment some weight. (Tr. at 19).  The ALJ determined that she would increase Plaintiff's exertional level to medium based on the medical evidence of record and Plaintiff's testimony.  (Tr. at 19).  When considering Dr. Brigety's assessment, the ALJ compared it to Plaintiff's activities of daily living, and lack of current or recent treatment for physical impairments.  (Tr. at 19).  The ALJ also considered Dr. Ware's September 2012 examination, when Plaintiff reported an improved range of motion and less pain in his shoulder, and he was able to lift his left arm above his head with full abduction and flexion.  (Tr. at 19).  Further, the ALJ noted that at the hearing, Plaintiff, "has not even alleged any limitations due to his physical impairments (Hearing Testimony)" but only alleged disability due to mental health impairments.  (Tr. at 19, 34).

The ALJ considered Dr. Brigety's assessment and afforded it some weight.  The ALJ provided reasons for affording his assessment some weight.  These reasons included comparing

the assessment to Plaintiff's testimony, Plaintiff's activities of daily living, the lack of current or recent treatment for physical impairments, and the treatment notes from Plaintiff's last visit to Dr. Ware, indicating Plaintiff was improving and had less pain.  The Court finds that the ALJ considered the weight she afforded Dr. Brigety's opinion and the reasons why she afforded his opinion some weight.  The Court finds that the ALJ did not err in affording some weight to Dr. Brigety's opinion, and the ALJ's decision was supported by substantial evidence.

### 3.  Dr. Gates and Dr. Keyser

Plaintiff argues that the ALJ's decision conflicts with the opinions of treating psychiatrist, Dr. Gates, and treating psychologist, Dr. Keyser.  Plaintiff claims that Dr. Gates and Dr. Keyser found Plaintiff to be seriously limited in certain areas, but the ALJ's RFC does not include these limitations.  The Commissioner responds that the ALJ properly considered Dr. Gates' and Dr. Keyser's opinions.

On January 28, 2013, Roger Keyser, Ph.D., and on March 18, 2013, Todd Gates, D.O. completed a joint Medical Opinion Re: Ability To Do Work-Related Activities (Mental).  (Tr. at 525-26).  Dr. Keyser and Dr. Gates found that Plaintiff was seriously limited in the following areas:  maintaining attention for two hour segments; carrying out very short and simple instructions; working in coordination with or proximity to others without being unduly distracted; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; being aware of normal hazards and taking appropriate precautions; and setting realistic goals or making plans independently of others.  (Tr. at 525-26).  The explanation on the form provided that Plaintiff is easily distracted, his thoughts are frequently tangential, and he has difficulty staying on one subject.  (Tr. at 525).  The explanation provided that these tendencies

are exacerbated when Plaintiff is interacting with other people and he is likely to distract them. (Tr. at 525).  The explanation included that Plaintiff has a history of plans and goals that he had not been able to meet, and "he seems oblivious of some of the negative consequences of his current goals."  (Tr. at 526).  Dr. Gates and Dr. Keyser found that Plaintiff's impairments or treatment would cause him to be absent from work about three days per month.  (Tr. at 526).

Although Dr. Gates and Dr. Keyser found Plaintiff seriously limited in some areas, they also found Plaintiff to be unlimited or very good in the following areas:  understanding and remembering very short and simple instructions; carrying out very short and simple instructions; maintaining regular attendance; sustaining an ordinary routine; making simple work-related decisions; performing at a consistent pace; interacting appropriately with the general public; and maintaining socially appropriate behavior.  (Tr. at 525-26).  Further, Dr. Gates and Dr. Keyser found that Plaintiff was limited but satisfactory in the following areas:  completing a normal workday and workweek without interruptions for psychologically based symptoms; and responding appropriately to changes in a routine work setting, and dealing with normal work stress.  (Tr. at 525).

The ALJ accurately summarized the medical opinion questionnaire of Dr. Gates and Dr. Keyser.  (Tr. at 20).  The ALJ considered the findings, noting the areas that Dr. Keyser and Dr. Gates found that Plaintiff was seriously limited and the areas where they found Plaintiff not to have such limitations.  (Tr. at 20).  After consideration, the ALJ afforded Dr. Keyser's and Dr. Gates' opinion some weight.  (Tr. at 20).  The ALJ stated that she incorporated most of Plaintiff's limitations as found by these medical professions in Plaintiff's RFC.  (Tr. at 20).

The ALJ states with particularity why she gave Dr. Gates' and Dr. Keyser's opinions some weight.  The ALJ found that even though Dr. Gates and Dr. Keyser found Plaintiff severely

limited in some areas, these findings conflicted with other findings by Dr. Gates and Dr. Keyser

where they found Plaintiff not to be limited.  For example, Dr. Gates and Dr. Keyser found

Plaintiff seriously limited in being able to work in coordination with or proximity to others

without being unduly distracted, yet found Plaintiff unlimited in his mental abilities and aptitude

needed to do particular types of jobs, such as the ability to interact appropriately with the general

public, and maintain socially appropriate behavior.  (Tr. at 525-526).  Although Dr. Gates and

Dr. Keyser indicated that Plaintiff would be absent from work for about three days per month,

they also found that Plaintiff had no limitations in maintaining regular attendance and being

punctual.  (Tr. at 525-526).  The ALJ included some of the limitations found by Dr. Gates and

Dr. Keyser in Plaintiff's RFC, such as:  Plaintiff being limited to work that is not high stress, is

not fast-paced, does not have frequent changes to the type of work, does not having frequent

changes in the work tasks, and allows the interaction with others to be limited to frequent or less.

(Tr. at 16).[9]  The Court finds that the ALJ stated with particularity the weight she afforded the

opinions of Dr. Gates and Dr. Keyser, and the reasons she afforded that weight were supported

by substantial evidence.

### III.    Conclusion

Upon consideration of the submissions of the parties and the administrative record, the

Court finds that the decision of the ALJ is supported by substantial evidence and decided upon

proper legal standards.

---

[9]  Plaintiff mentions that the ALJ found Plaintiff had moderate difficulties with regard to
concentration, persistence, or pace, but claims that the ALJ failed to include a more detailed
analysis of how these limitations were considered in Plaintiff's RFC.  In this case, the ALJ did
not limit Plaintiff to unskilled work alone, but added further limitations as mentioned *supra* in
Part I.C. that incorporated the ALJ's finding that Plaintiff had moderate difficulties with regard
to concentration, persistence, or pace.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 13, 2016, 2016.

_____

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties